# ESHLEMAN v. SHANTZ.

# SHANTZ v. ESHLEMAN.

---

PATENTS; MASTER AND SERVANT; INTERFERENCE; PATENTABILITY.

1. An employee who constructs a device for casting button shanks into.
     button blanks is not deprived of his right to the invention by his.
     relation as employee, where his employer merely suggested to him
     a desire for a certain result without suggestion as to the means.
     by which it could be accomplished. (Following *Robinson* v. *Mc-
     Cormick*, 29 App. D. C. 98, 10 Ann. Cas. 548; *McKeen* v. *Jerdone*, 34.
     App D. C. 163.)

2. Claims for a device for casting button shanks into button blanks, when not limited to finished shanks or eyeleted shanks are readable upon a previous device for casting unfinished button shanks into button blanks, and are properly denied.

3. Claims disclosing certain features in a device for casting button shanks into button blanks held properly allowed, where the features were disclosed in claimant's application though not in the machine which he built.

Nos. 785 and 786.   Patent Appeals.   Submitted November 13, 1912.   Decided December 30, 1912.

HEARING on two appeals from different parts of the same decision of the Commissioner of Patents in an interference. *Affirmed.*

The facts are stated in the opinion.

*Mr. Henry C. Workman* for Eshleman.

*Mr. William F. Hall* and *Mr. A. E. Parsons* for Shantz.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The two appeals are from parts of the same final decision of the Commissioner of Patents, awarding some of the claims of the issue of an interference to Edgar Shantz and others to Samuel B. Eshleman.

The patent sought is for a button-making machine, and the issue contains seventeen counts as follows:

"1. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, means for supporting a socketed button blank underneath said die, and means for operating said valve.

"2. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said out-

let, a movable two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, means for supporting a socketed button blank underneath said die, and means for operating said valve.

"3. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, a plunger adapted to support a socketed button blank underneath said die, means for operating said plunger, and means for operating said valve.

"4. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a self-closing valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, and a normally open outlet, means for setting said die in the casting position, means for supporting a socketed button blank underneath the outlet of said die, and means for operating said valve.

"5. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, a plunger adapted to support a socketed button blank underneath said die, and means for operating said plunger to support said blank in the casting position, and connected means for subsequently opening said valve.

"6. A machine for providing button blanks with shanks, said machine comprising in combination a receptacle for molten metal, an outlet in said receptacle, a sectional die for forming the shank, means for bringing the die sections together and in casting position with respect to said outlet, a support for the button blank, means for moving said support to bring the blank into casting position with respect to said die, and means to separate the die sections.

"7. In a button-making machine, the combination of three elements, a support for a button head, formed with a recess

for receiving the shank of the button, a mold for forming the shank on the button head, the mold having inlet and exit orifices, and a reservoir for supplying molten material to the mold, the reservoir having an exit port, the inlet and exit orifices of the mold serving to register, respectively, with the exit port of the reservoir and the recess of the button head, and being normally out of registration therewith, and means for moving two of said elements relatively to the other element for effecting the registration of said orifices with said exit port and said recess, substantially as and for the purpose set forth.

"8. In a button-making machine, the combination of three elements, a support for a button head, formed with a recess for receiving the shank of the button, the support having means for holding the button with its recess presented upwardly, a mold for forming a shank on the button head, the mold being disposed above the support and having inlet and exit orifices, respectively, in its upper and lower sides, a reservoir for supplying molten material to the mold, the reservoir being located above the mold and having an exit port, the inlet and exit orifices of the mold serving to register, respectively, with the exit port of the reservoir and the recess of the button head, and being normally out of registration therewith, and means for moving the support for the button head and the mold to bring the inlet and exit orifices of the mold into registration with said exit port and said recess, substantially as and for the purpose described.

"9. In a button-making machine, a support for a button head, formed with a recess for receiving the shank of the button, a mold for forming the shank on the button head, the mold having inlet and exit orifices on opposite side thereof, and comprising two separable sections, a reservoir for supplying molten material to the mold, the reservoir having an exit port, the inlet and exit orifices of the mold serving to register, respectively, with the exit port of the reservoir and the recess of the button head, and being normally out of registration therewith, means for moving the support for the button head and the mold to bring said orifices into and out of registration, respectively,

with said exit port and said recess, and means for moving the sections of the mold together when said orifices are registering with said exit port and said recess, and for separating said sections when said orifices and said exit port and recess are going out of register, substantially as and for the purpose described.

"10. In a button-making machine, a support for a button head, a mold for forming a shank on the button head, the mold having an inlet orifice, a reservoir for supplying molten material to the mold, the reservoir having an exit port, the inlet orifice of the mold serving to register with the exit port of the reservoir and being normally out of registration therewith, a plunger for opening and closing said port, and means for moving the mold toward the reservoir to bring the inlet orifice thereof into registration with said exit port, and for moving the plunger relatively to said port, said means comprising a rocking element, means for actuating said element in one direction, and a spring for moving the same in the opposite direction, substantially as and for the purpose described.

"11. In a button-making machine, a support for a button head, a mold for forming a shank on the button head, the mold having an inlet orifice, a reservoir for supplying molten material to the mold, the reservoir having an exit port, the inlet orifice of the mold serving to register with the exit port of the reservoir and being normally out of registration therewith, a plunger for opening and closing said port, and means for moving the mold toward the reservoir to bring the inlet orifice thereof into registration with the exit port, and for moving the plunger relatively to said port, said means comprising a rocking element, means for actuating said element in one direction, and a coiled spring encircling the rocking element and having one end fixed to a point exterior to said element, and its other end fixed thereto, substantially as and for the purpose specified.

"12. A machine for forming and applying metal shanks to buttons, comprising a receptacle for molten metal having an outlet nozzle, a valve controlling the same, a pair of movable dies arranged in proximity to said nozzle and forming when together a shank cavity, a vertically movable button supporting plunger

adapted to press a button against the under side of the dies to close said die cavity, and a single operating means for the dies, plunger, and valve.

"13. A machine for forming and applying metal shanks to buttons, comprising a receptacle for molten metal having an outlet nozzle, means for heating said receptacle, a valve controlling the nozzle, a pair of movable dies arranged in proximity to said nozzle and forming when together a shank cavity, a vertically movable button supporting plunger adapted to press a button against the underside of the dies to close said die cavity, and a single operating means for the dies, plunger, and valve.

"14. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, a plunger adapted to support a socketed button blank underneath said die, a treadle and connections therefrom for operating said plunger and for operating said valve.

"15. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, a plunger adapted to support a socketed button blank underneath said die, a treadle, and connections therefrom for operating said plunger and for subsequently operating said valve.

"16. A device for casting button shanks into button blanks, comprising a melting pot having an outlet, a valve for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, a plunger adapted to support a socketed button blank underneath said die, a treadle, and connections from said treadle, means actuated thereby for operating said plunger, and a loose connection between said treadle and said valve.

"17. A casting device for casting button shanks into button

blanks, comprising a melting pot having an outlet, a gate for said outlet, a two-part die adapted to form a shank and having a gate adapted to register with said outlet, means for setting said die in the casting position, a plunger adapted to support a socketed button blank underneath said die, a treadle, a lever for actuating said plunger, a spring operated lever for actuating said valve, and connections from the treadle to the said levers for successively operating the plunger to support a blank under the die and for opening said valve."

Eshleman's application was filed June 19, 1905, and that of Shantz January 4, 1907.

The Examiner of Interferences awarded priority to Eshleman on all the counts. On Shantz's appeal therefrom the Examiners in Chief affirmed the decision in favor of Eshleman as to counts 1 to 6, inclusive, count 9, and counts 12 to 17 inclusive, but reversed it as to counts 7, 8, 10, and 11, and as to them awarded priority to Shantz. On appeal by both parties to the Commissioner, this decision was reversed as to counts 10 and 11 and affirmed as to all the others. As a result the final award of priority was to Shantz as to counts 7 and 8 and to Eshleman as to all others. The invention is correctly described in the decision of the Examiners in Chief:

"The invention with which this interference is concerned is a mechanism for casting metal shanks upon button blanks. Such mechanism consists essentially of three elements,—a ladle or melting receptacle for the metal to be used in casting the shank, a mold to give form to the shank, and a support for the button blank adapted to bring such blank into the proper position relative to the mold and to retain it there during the casting operation. These several elements are arranged with the ladle or melting pot uppermost, with the mold immediately there beneath, and with the support for the button blank beneath the mold. In the bottom of the ladle or melting pot is an opening controlled by a valve and adapted to register with the inlet opening into the mold, when the latter is brought into alignment therewith, in such a way that the molten metal may pass by gravity from the receptacle containing it, into and

through the mold, into the recess in the button blank supported beneath the mold. Certain of the claims refer to the mold as a two-part mold, or by some equivalent expression, but four of the claims, numbered 7, 8, 10, and 11, merely define the mold as 'a mold for forming a shank on the button head.' "

Edgar Shantz is secretary and manager of the International Button Company, of Rochester, New York. He is the son of M. B. Shantz, who was formerly engaged in the button manufacture in Canada and removed to Rochester, where he organized several partnerships and corporations engaged in button manufacture. Eshleman was a practical machinist who had worked for M. B. Shantz in Canada, and followed him to Rochester. The first organization, or partnership, was under the name of M. B. Shantz Company. M. B. Shantz parted with his interest in said company and organized the M. B. Shantz Company. Later he organized the International Button Company, and was the principal stockholder therein, as well as in the M. B. Shantz Company. Eshleman entered the service of the M. B. Shantz Company, and occasionally performed special services for the International and other companies in which M. B. Shantz was interested, at the latter's request. Prior to 1903, Edgar Shantz, with the aid of an employee of the International Company, had built a machine for casting a metal stem in or on a button blank, on which he secured a British patent. This machine, after making sample buttons, was dismantled and parts of it used in building a second machine. This was an improvement on the first machine, and was used in the factory of the International Company until supplanted by the Eshleman machine in the summer of 1905. The second Shantz machine was power driven. When the mold plate was advanced so as to bring a die under the exit part of the reservoir of molten metal, the button blank was elevated to bring the prepared undercut recess therein adjacent to the die, whereupon a valve in the reservoir opened to permit the molten metal to flow into the die and the button recess. The button support was then lowered, the mold plate advanced another step, and the button with stem removed. The button was then taken to another machine,

where an eyelet hole was punctured, and the stem cut and turned to proper size.

This was the state of the art when Eshleman, who was an inventor of some other machines used in the preparation of button blanks, began work in 1904, to produce a machine for casting a complete stem in and on a button. After constructing a model and improving on the same he built two machines early in 1905, doing his work at home and paying for all the castings made in a foundry. This machine worked by hand and foot, had a two-part mold, which enabled the stem to be cast with an eyelet and to be removed by opening the mold. The button was completed in the one operation, requiring nothing more than the removal of the sprue. These were installed in the International Company's factory, and the Shantz machine was laid aside and dismantled. They remained in operation there until the spring of 1906, when they were removed by Eshleman or his agent. In the meantime Edgar Shantz had built a new machine containing the two-part mold, which he installed in the factory.

Shantz contended that Eshleman, being an employee, was, in constructing his machine, carrying out the instructions of M. B. Shantz and himself. Each tribunal of the Patent Office in succession denied this contention, reviewing the evidence and discussing the question at some length. Without adding to that discussion, our conclusion is, without regard to the fact that Eshleman was certainly not an employee of Edgar Shantz or of the International Button Company, or to the legal proposition that Edgar Shantz cannot set up invention in M. B. Shantz to defeat his rival, that communications to Eshleman went no further than to evince a desire for a certain result. There was no means suggested to him by which the result could be accomplished. The Commissioner was therefore right in holding that the relation of employer and employee did not deprive Eshleman of his right to claim the invention as his own. *Robinson* v. *McCormick*, 29 App. D. C. 98–108, 10 Ann. Cas. 548; *McKeen* v. *Jerdone*, 34 App. D. C. 163–172, and cases cited. The rebuttal evidence that was stricken out would not change this conclusion, and we need not consider the point made thereon.

There was difference of opinion between the several tribunals in respect of certain counts of the issue, as appears from the statements of their decisions heretofore given.

The Examiner of Interferences, in his discussion, divided the counts into two general groups. One group—counts 7, 8, 10, and 11—are not specific as to the construction of the mold, but describe it as a mold for forming a shank on the button head. The second group—all the remaining counts—refer to the mold as a two-part mold, or use descriptive language which imposes that limitation. The Examiner of Interferences awarded Eshleman priority on all the counts in each group. The Examiners in Chief and the Commissioner concurred with this decision as to the counts of the second group, but differed with him and with each other as to certain counts in the first group. Eshleman's contention that the shank meant in those counts was a finished shank with eyelet was substantially adopted by the Examiner of Interferences in construing counts 7 and 8 and also as to counts 10 and 11. In other words, it was held that the Shantz machine of 1903 was not embraced thereby, because it did not turn out a complete or finished shank. The Examiners in Chief rejected this narrow construction in favor of a broader one, holding that the shank of the counts 7 and 8 meant a shank in any form. As to counts 10 and 11 they expressed the opinion that there was no proof that the machine of 1903 included other features of said counts, and also that the limitations of those counts are not disclosed in Eshleman's application, wherefore he had no right to make claims corresponding to said counts. They further held that Shantz, who originally made claims corresponding to said counts and whose application discloses subject-matter responding thereto, was, on that account, entitled to priority as to them also. Hence their reversal of the decision of the Examiner of Interferences as to counts 7, 8, 10, and 11.

The Commissioners agreed with the Examiners in Chief in holding that counts 7 and 8 are readable on the Shantz machine of 1903. He agreed with them that the word "shank" is generic; calling attention to the fact that none of the counts call for an eyeleted shank, but that those in the second group afore-

said are limited to a two-part die adapted to form a shank, and that, obviously, a two-part die could be used to form a shank of the kind made by the Shantz machine. He further adverts to the fact that Shantz's specifications make no reference to an eyeleted shank, and to the fact that only in the concluding part of his description Eshleman refers to the shank in these words: "In the present form of device the button shank has a stem, 49, terminated by the eye, 50." He also argues that by common knowledge the eyeleted shank is but one of many forms, one of which is merely a projection like a push button, etc., not unlike that formed by Shantz's machine. We are not without doubt as to the soundness of those decisions, but that doubt is not sufficient to warrant us in reversing them. In giving his reasons for disagreeing with the Examiners in Chief as to counts 10 and 11, the Commissioner says:

"The decision of the Examiners in Chief is somewhat indefinite as to just what features they consider not disclosed in the Eshleman application.

"The latter portion of count 10 reads as follows: 'Means for moving the mold toward the reservoir to bring the inlet orifice thereof into registration with said exit port, and for moving the plunger relatively to said port, said means comprising a rocking element, means for actuating said element in one direction, and a spring for moving the same in the opposite direction, substantially as and for the purpose described.'

"While it is true that in Eshleman's device the die is mounted on a pivoted arm and is manually swung into and out of position beneath the reservoir, it is also true that when swung to a position beneath the reservoir its inlet orifice is not brought into registration with the exit port of the reservoir until the button support and the mold resting upon the same are moved upward by the treadle. The operation of this same treadle also moves the plunger for opening and closing the port in the reservoir. Eshleman's treadle clearly comprises a rocking element consisting of the pin or stud of the lever 26, and means consisting of the lever 26 for moving said element in one direction and a spring 27 for moving the same in the opposite direction. A fur-

ther limitation as to the construction of this spring specified in count 11 is likewise present in the Eshleman device. It is unnecessary to consider whether the evidence shows the existence of these features in the machine built by Eshleman, since, as stated above, they are disclosed in Eshleman's application, filed June 19, 1905, which is prior to any date to which Shantz is entitled for these features."

We concur in this conclusion of the Commissioner.

The award of the Commissioner of priority to Eshleman as to all the counts of the issue except counts 7 and 8, and of priority to Shantz as to counts 7 and 8, will be affirmed; and the one final judgment will embrace both appeals, which have been separately docketed. This decision and the proceedings herein will be certified to the Commissioner of Patents, as required by law.                      *Affirmed.*